STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0723

WILLIAM J. BLANFORD

VERSUS

LAMMICO, ARCH SPECIALTY INSURANCE COMPANY, LEXINGTON
INSURANCE CO., OCHSNER MEDICAL CENTER-BATON ROUGE, OCHSNER
CLINIC FOUNDATION, WALTER L. BRINGAZE, III, M.D., GREGORY P.
GASPARD, M.D., CLAUDE J. TELLIS, M.D., PETER CRAWFORD, N.P., LEI GAO,
M.D., ELIZABETH LEJEUNE, N.P., AND VIRASITH RAJAPHO, M.D.

Judgment Rendered:  MAR 0 3 2022

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 691211

Honorable William A. Morvant, Judge Presiding

* * * * * *

Kara H. Samuels                     Counsel for Plaintiff/1st Appellant
Tiffany A. Morales                  William J. Blanford
New Orleans, Louisiana
and
Michael C. Palmintier
Baton Rouge, Louisiana


Tara S. Bourgeois                   Counsel for Defendants/2nd Appellants
Jonathan E. Thomas                  Walter L. Bringaze, III, M.D. and LAMMICO
Nancy B. Roberts
Baton Rouge, Louisiana

Don S. McKinney                     Counsel for Defendants/Appellees
Erica P. Sensenbrenner              Ochsner Clinic Foundation, Gregory P.
New Orleans, Louisiana              Gaspard, M.D., Claude J. Tellis, M.D., and
                                    Lei Gao, M.D.

* * * * * *

BEFORE:  McCLENDON, WELCH, AND THERIOT, JJ.

**McCLENDON, J.**

William Blanford, plaintiff herein, appeals a summary judgment dismissing his medical malpractice claim against defendants Gregory P. Gaspard, M.D., Claude J. Tellis, M.D., Lei Gao, M.D., and Ochsner Clinic Foundation, with prejudice. After review, we reverse the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Mr. Blanford was admitted to Ochsner's Baton Rouge campus on July 16, 2012. An echocardiogram the following day revealed that Mr. Blanford was suffering from congestive heart failure. Mr. Blanford underwent aortic valve replacement (AVR) surgery on July 18, 2012. He was transferred from the ICU to the telemetry unit on July 20, 2012. However, by July 21, 2012, Mr. Blanford was in acute liver and renal failure. He was transferred back to the ICU until July 24, 2012, when he was relocated to Ochsner's New Orleans campus to await a liver transplant.

Mr. Blanford requested a Medical Review Panel. On August 28, 2019, in a unanimous decision, the Medical Review Panel found no evidence that Mr. Blanford's healthcare providers breached the standard of care.

Mr. Blanford filed suit on November 25, 2019, asserting claims of medical malpractice against numerous defendants regarding his surgery, pre-operative care, and post-operative care. Pertinent to this appeal, named as defendants were Walter L. Bringaze, III, M.D., the cardiothoracic surgeon who performed Mr. Blanford's AVR surgery; LAMMICO, as Dr. Bringaze's professional liability insurer; Dr. Gao, a subspecialist in cardiology; Dr. Gaspard, a subspecialist in gastroenterology; Dr. Tellis, a subspecialist in pulmonology; and Ochsner Clinic Foundation (OCF), the employer of Dr. Gao, Dr. Gaspard, and Dr. Tellis.[1]

Defendants OCF, Dr. Gaspard, Dr. Tellis, and Dr. Gao (sometimes collectively, "the Ochsner Defendants") filed a motion for summary judgment on August 4, 2020.

---

[1] The other named defendants included Virasith Rajapho, M.D.; Peter Crawford, N.P.; Lexington Insurance Co., as the insurer of Dr. Rajapho and Mr. Crawford; East Baton Rouge Medical Center, LLC d/b/a Ochsner Medical Center-Baton Rouge; Arch Specialty Insurance Company; and Elizabeth Lejeune, N.P. These defendants were dismissed by consent judgments dated July 16, 2020, and November 18, 2020. Both consent judgments explicitly stated that the above-named defendants were dismissed with prejudice and that the remaining parties reserved their right to call any or all of the dismissed defendants as witnesses at trial and/or to put on evidence of the dismissed defendants' assessment, care, and treatment of Mr. Blanford during the relevant time period.

The Ochsner Defendants maintained that Mr. Blanford could not produce expert testimony to support his claims of medical malpractice against them, and accordingly, requested the dismissal of Mr. Blanford's claims.

The Ochsner Defendants' motion for summary judgment was originally set for hearing on December 7, 2020. However, the hearing was continued to allow time for the deposition of Mr. Blanford's expert witness, Gregory Ahearn, M.D., a physician board certified in pulmonary medicine, critical care medicine, and neurocritical care.

Dr. Ahearn's deposition took place on December 16, 2020. Based on Dr. Ahearn's review of the medical records, Dr. Ahearn testified that Mr. Blanford was likely in multi-organ failure prior to the AVR surgery, but his condition was not thoroughly evaluated, nor was it medically optimized. Consequently, although Mr. Blanford was at high risk of complications post-operatively, the severity of the risk was not appreciated and the appropriate level of vigilance was not employed during Mr. Blanford's post-operative care. Dr. Ahearn testified that Mr. Blanford was prematurely discharged from the ICU while showing signs of hepatic and renal failure on post-operative day two. Dr. Ahearn further opined that Mr. Blanford developed hepatorenal syndrome, a complication wherein a patient with severe liver disease develops renal failure. Dr. Ahearn testified that the failure to diagnose and treat Mr. Blanford's hepatorenal syndrome was a breach of the standard of care that caused Mr. Blanford damages. Despite the fact that numerous other physicians and subspecialists were involved in Mr. Blanford's care both pre-operatively and post-operatively, including the Ochsner Defendants, Dr. Ahearn declined to find fault with any physician other than Dr. Bringaze. Dr. Ahearn explained that this was because Dr. Bringaze, as the surgeon, was "the driving force," "in the driver's seat, as the surgeon," and "running the show." Dr. Ahearn explicitly testified that, in his opinion, the Ochsner Defendants were not at fault.

Following Dr. Ahearn's deposition, Dr. Bringaze and LAMMICO filed a pleading captioned "Motion [*in Limine*] and Request for Expedited Hearing or, in the Alternative, Motion to Continue Hearing on Co-Defendants' Motion for Summary Judgment" ("motion *in limine*") on January 8, 2021. The motion *in limine* asserted that Dr. Bringaze

3

and LAMMICO did not oppose the Ochsner Defendants' motion for summary judgment, but requested that, should the trial court grant summary judgment:

> ...in order to properly defend their case, [Dr. Bringaze and LAMMICO] be allowed to put on factual evidence at trial that Dr. Bringaze was not in charge of certain aspects of William Blanford's care of which plaintiff's expert, Dr. Ahearn, is or may be critical; and factual evidence regarding [the Ochsner Defendants'] involvement in the care of William Blanford including, but not limited to, witness testimony and/or any entries in the medical records by [the Ochsner Defendants] regarding the assessment, care and treatment provided to William Blanford and/or any conversations that may have taken place between Dr. Bringaze [and the Ochsner Defendants] concerning the assessment, care and treatment provided to William Blanford.

Mr. Blanford opposed the motion *in limine*. Mr. Blanford argued that although Dr. Bringaze "insists that he is not opposing the motions filed by his co-defendants," he "nevertheless clearly intends to introduce evidence of their conduct and fault at the trial of this case, in the event that the motion is granted, in violation of Code of Civil Procedure article 966G."[2] Following a hearing, the trial court deferred ruling on the motion *in limine* to the trial on the merits.

On March 17, 2021, the Ochsner Defendants filed a supplemental memorandum in support of their motion for summary judgment, together with excerpts of Dr. Ahearn's deposition as additional exhibits. The Ochsner Defendants maintained that Dr. Ahearn's deposition testimony "confirms that the Ochsner Defendants' motion must be granted," because "Dr. Ahearn had criticisms of non-Ochsner defendant Dr. Bringaze, but he confirmed very plainly under oath that he has no criticisms of the Ochsner doctors or any other healthcare providers." Thus, the Ochsner Defendants concluded that Dr. Ahearn's testimony "exonerates" them.

On March 26, 2021, Dr. Bringaze and LAMMICO filed an opposition to the Ochsner Defendants' motion for summary judgment in order to maintain a possible

---

[2] Mr. Blanford also argued that the motion was premature, because the trial court allowed additional discovery following Dr. Ahearn's deposition, but Dr. Ahearn had not had the opportunity to review the defendants' responses, such that Mr. Blanford was unable to determine whether he should oppose the motion for summary judgment or not.

defense of comparative fault.[3] Dr. Bringaze and LAMMICO argued that genuine issues of material fact existed as to whether the Ochsner Defendants negligently failed to diagnose and appropriately treat or medically optimize Mr. Blanford's conditions pre-operatively and post-operatively, and whether, if the Ochsner Defendants had timely diagnosed and appropriately treated Mr. Blanford, it would have changed their recommendations regarding Dr. Bringaze's treatment of the patient and resulted in the chance of a better medical outcome. Dr. Bringaze and LAMMICO pointed out that while Dr. Ahearn gave the opinion that Dr. Bringaze alone breached the standard of care because he "call[ed] all the shots in this dynamic," Dr. Ahearn also acknowledged that the Ochsner Defendants were "on board" with Mr. Blanford's care and monitored Mr. Blanford's condition both pre-operatively and post-operatively.

Also on March 26, 2021, Mr. Blanford filed a "Motion to Adopt Any Opposition and Exhibits Filed by [Dr. Bringaze and LAMMICO]" ("motion to adopt"). The trial court granted Mr. Blanford's motion to adopt on April 6, 2021.

The Ochsner Defendants' motion for summary judgment was heard on April 12, 2021. Following the hearing, the trial court granted the Ochsner Defendants' motion for summary judgment and dismissed Mr. Blanford's claims against them with prejudice. The written judgment, executed April 15, 2021, provided in pertinent part:

> Based on the pleadings, the evidence, and the arguments of counsel, and for the reasons stated orally, the Court finds that the Ochsner Defendants' Motion for Summary Judgment shall be and is hereby GRANTED. The Court also finds La. C.C.P. Art. 966G does not apply to this ruling, as the Court has made no finding that the Ochsner Defendants were not negligent, not at fault, or did not cause in whole or in part the injury alleged.

> Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that Defendants Ochsner Clinic Foundation, Gregory Gaspard, M.D., Claude Tellis, M.D., and Lei Gao, M.D. shall be and are hereby DISMISSED WITH PREJUDICE but without the application of La. C.C.P. Art. 966G based on the Court's findings.

---

[3] Dr. Bringaze and LAMMICO's opposition first noted their objection to the Ochsner Defendants' supplemental memorandum and exhibits, as the supplemental memorandum and exhibits were not proper or timely under LSA-C.C.P. art. 966(B) or Uniform Rules for District Courts, Rule 9.10. Further, the supplemental memorandum and exhibits were not concurrently served on Dr. Bringaze and LAMMICO as required by Uniform Rules for District Courts, Rule 9.9. However, because Dr. Bringaze and LAMMICO offered the entirety of Dr. Ahearn's deposition in support of their opposition, they later withdrew their objection.

Mr. Blanford has appealed the April 15, 2021 judgment. On appeal, Mr. Blanford maintains that the trial court erred in granting the Ochsner Defendants' motion for summary judgment because the motion was opposed by expert medical testimony offered by Dr. Bringaze, which Mr. Blanford timely adopted. Alternatively, in the event this Court finds that the trial court properly granted the Ocshner Defendants' motion for summary judgment, Mr. Blanford argues that the trial court erred in ruling that LSA-C.C.P. art. 966(G) was inapplicable.

Dr. Bringaze and LAMMICO also appealed the April 15, 2021 judgment. Dr. Bringaze and LAMMICO first maintain that in the event this Court upholds the trial court's grant of the Ochsner Defendants' motion for summary judgment on appeal, Dr. Bringaze and LAMMICO have no objection to the trial court's ruling that LSA-C.C.P. art. 966(G) was not applicable to the dismissal of the Ochsner Defendants. However, in the event this Court reverses the trial court's judgment as it pertains to the applicability of LSA-C.C.P. art. 966(G), Dr. Bringaze and LAMMICO contend that the trial court erred in granting the motion for summary judgment because genuine issues of material fact exist. Specifically, Dr. Bringaze and LAMMICO maintain that the trial court failed to properly consider Dr. Bringaze's affidavit, and/or improperly weighed conflicting evidence in contravention of LSA-C.C.P. art. 966.

## SUMMARY JUDGMENT

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Jones v. Baton Rouge General Medical Center-Bluebonnet**, 2020-1250 (La.App. 1 Cir. 6/4/21), 327 So.3d 512, 516. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3).

The burden of proof to establish that no material factual issues exist is on the mover. However, if the mover will not bear the burden of proof at trial, the mover is not required to negate all essential elements of the adverse party's claim. Rather, the

6

mover must point out to the trial court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See LSA-C.C. P. art. 966(D)(1); **Mariakis v. North Oaks Health System**, 2018-0165 (La.App. 1 Cir. 9/21/18), 258 So.3d 88, 93. If the adverse party fails to do so, there is no genuine issue of material fact and summary judgment will be granted. **McCoy v. Manor**, 2018-1228 (La.App. 1 Cir. 5/9/19), 277 So.3d 344, 347.

A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Marks v. Schultz**, 2020-0197 (La.App. 1 Cir. 12/10/20), 316 So.3d 534, 538. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Jenkins v. Hernandez**, 2019-0874 (La.App. 1 Cir. 6/3/20), 305 So.3d 365, 371, writ denied, 2020-00835 (La. 10/20/20), 303 So.3d 315. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Galliano v. CB & I, LLC**, 2018-0844 (La.App. 1 Cir. 4/10/19), 275 So.3d 906, 909.

## MEDICAL MALPRACTICE

The substantive law at issue in this appeal is the law governing medical malpractice. To establish a claim for medical malpractice, a plaintiff must prove the following by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and (3) there was a causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A)[4];

---

[4] Louisiana Revised Statutes 9:2794 provides, in part, that:

A. In a malpractice action based on the negligence of a physician ..., the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, ... within the

7

**Vanner v. Lakewood Quarters Retirement Community**, 2012-1828 (La.App. 1 Cir. 6/7/13), 120 So.3d 752, 755. Expert testimony is generally required to establish the applicable standard of care and whether that standard of care was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. **Williams v. Our Lady of Lake Hospital, Inc.,** 2009-0267 (La.App. 1 Cir. 9/11/09), 22 So.3d 997, 999.

## DISCUSSION

As set forth above, the Ochsner Defendants sought summary judgment on the basis that Mr. Blanford would not be able to produce expert medical testimony in support of the claims asserted against them. As the movers, the Ochsner Defendants have the initial burden of proving their entitlement to summary judgment as a matter of law. See LSA-C.C.P. art. 966(D)(1). However, because the Ochsner Defendants will not bear the burden of proof at trial, they are under no burden to disprove medical malpractice. Rather, the Ochsner Defendants need only point out that Mr. Blanford cannot support his burden of proof at trial to demonstrate medical malpractice. Should the Ochsner Defendants make a *prima facie* showing that their motion should be granted, the burden would then shift to Mr. Blanford to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the Ochsner Defendants are not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1); see **Mariakis**, 258 So.3d at 94.

In support of their motion, the Ochsner Defendants initially offered Mr. Blanford's Medical Review Panel requests[5] and the Medical Review Panel opinion unanimously finding no breach of the standard of care by any of Mr. Blanford's treating healthcare providers.[6] Following Dr. Ahearn's deposition, the Oschner Defendants supplemented

---

involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

[5] Mr. Blanford amended and supplemented his original request for a Medical Review Panel several times.

[6] The Ochsner Defendants also submitted Mr. Blanford's petition for damages and discovery requests the Ochsner Defendants propounded to Mr. Blanford, though without Mr. Blanford's responses to same.

their submission with an excerpt from the deposition transcript. The excerpt included Dr. Ahearn's explicit testimony that he did not have any criticisms of Dr. Gao, Dr. Gaspard, or Dr. Tellis regarding the decision to offer surgery to Mr. Blanford, Mr. Blanford's pre-operative care, or the decision to transfer Mr. Blanford out of the ICU. Dr. Ahearn further testified that he did not have any criticisms of any physicians or other health care providers in Mr. Blanford's care and treatment, other than Dr. Bringaze. Thus, the Ochsner Defendants pointed out the absence of factual support necessary to establish elements of Mr. Blanford's claim, specifically the applicable standard of care and whether that standard of care was breached.

Accordingly, the burden then shifted to Mr. Blanford to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the Ochsner Defendants were not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1); see **Mariakis**, 258 So.3d at 94. As noted above, Mr. Blanford did not file an opposition to the Ochsner Defendants' motion for summary judgment, but he adopted the opposition filed by Dr. Bringaze and LAMMICO. In support of Dr. Bringaze and LAMMICO's opposition, they offered Dr. Bringaze's affidavit; the entirety of Dr. Ahearn's deposition and the exhibits attached thereto, including Dr. Ahearn's expert report, verified by Dr. Ahearn's affidavit; excerpts of Mr. Blanford's medical records; and Mr. Blanford's July 16, 2020 responses to the Ochsner Defendants' discovery requests, wherein Mr. Blanford had originally produced Dr. Ahearn's expert report.

While the Ocshner Defendants offered an excerpt of Dr. Ahearn's deposition testimony, Appellants offered Dr. Ahearn's deposition testimony in its entirety, together with Dr. Ahearn's affidavit. In forming his opinion of Mr. Blanford's care, Dr. Ahearn reviewed the medical review panel opinion and reasons, Mr. Blanford's submission of evidence, the defendants' submissions of evidence, and Mr. Blanford's medical records. Dr. Ahearn's extensive testimony primarily addressed his assessment of the pre-operative and post-operative care rendered to Mr. Blanford.[7]

---

[7] Regarding the July 18, 2012 AVR surgery, Dr. Ahearn testified that he had no opinion about either Dr. Bringaze's technical performance or Mr. Blanford's intraoperative treatment.

Regarding Mr. Blanford's pre-operative care, Dr. Ahearn testified that several warning flags in Mr. Blanford's medical records indicated that Mr. Blanford was suffering from multi-organ failure, which placed him at an extraordinarily high risk for "renal failure, prolonged respiratory failure, liver failure, encephalopathy... infections, wound infections, [and] hospital-acquired infections." Given these circumstances, Dr. Ahearn was critical of the pre-operative assessment, referring to it as a "paltry" assessment consisting of an insufficient pre-operative investigation and "no optimization." He attested that, in his opinion, Dr. Bringaze "grossly underestimated his patient's operative risk and failed to recognize, investigate, and treat the brewing storm that was evident pre-operatively and was obvious immediately post[-operatively]."

With respect to whether the care rendered to Mr. Blanford pre-operatively breached the standard, Dr. Ahearn's testimony was less than clear. At one point during his deposition, Dr. Ahearn testified that the lack of investigation and optimization was a breach of the standard of care. When asked, "[B]y whom?" Dr. Ahearn ascribed the fault to Dr. Bringaze as the "driving force," responsible for performing heart surgery on Mr. Blanford "without really understanding the basis for his underlying abnormalities," which led to a failure to exercise the appropriate level of vigilance post-operatively. However, when later asked whether it was a breach of the standard of care not to delay the surgery in an effort to optimize Mr. Blanford's physiology prior to surgery, Dr. Ahearn testified that he didn't believe it was "necessarily" or "strictly" a breach of the standard of care "to take [Mr. Blanford] urgently to the operating room with[out]... a more detailed evaluation," though under those circumstances, "post[-]operatively... you need to be extra careful in the intensive care unit, because things may unravel..." Dr. Ahearn stated that he would defer to Dr. Bringaze's judgment with respect to whether to proceed with the AVR surgery without further assessment, "but what [he] would object to is that [Dr. Bringaze] elected to take a big risk up front, but didn't really play good defense on the back end of the surgery... post[-]operatively."

Dr. Ahearn also testified that the alleged failure to diagnose Mr. Blanford with cardiac cirrhosis[8] pre-operatively was a breach of the standard of care. When asked which medical specialists would have been involved in working up the patient for cardiac cirrhosis, Dr. Ahearn responded "[c]ardiology and hepatology." However, when asked to whom he attributed this breach, Dr. Ahearn again identified Dr. Bringaze as the "driving force," taking Mr. Blanford into surgery without recognizing significant liver disease and the impact the condition would have on Mr. Blanford's operative risks and post-operative care.

With respect to Mr. Blanford's post-operative care, Dr. Ahearn testified that on post-operative day 2, July 20, 2012, Mr. Blanford's kidney function, liver function, and heart function were all deteriorating. In addition, Mr. Blanford was experiencing fevers that "no one really under[stood]." Dr. Ahearn believed that Mr. Blanford was in liver failure "immediately post[-]operatively" and was "developing multi-organ failure right under their nose." Under these circumstances, it was Dr. Ahearn's opinion that the order to transfer Mr. Blanford from the ICU, which was given by Dr. Bringaze on July 20, 2012, was premature. By post-operative day 3, July 21, 2012, Mr. Blanford "was in fulminant complete liver failure and renal failure" with a poor prognosis.

Dr. Ahearn's assessment of Mr. Blanford's condition post-operatively was that more likely than not, Mr. Blanford had developed hepatorenal syndrome, "a dreaded complication of severe liver disease [that] carries a grim prognosis... a patient with liver disease develops renal failure that is often refractory to treatment." Dr. Ahearn testified that the failure to treat Mr. Blanford for hepatorenal syndrome post-operatively was a breach of the standard of care. Dr. Ahearn explained that in his practice, critical care would manage hepatorenal syndrome, so while he "would have no expectation that [Dr. Bringaze] actually treat the hepatorenal syndrome," he felt that "[Dr. Bringaze needed] to be cognizant of it... and the risk it imparts on his surgery... he needs to recognize the possibility of it."

Throughout his deposition, and in his affidavit, Dr. Ahearn consistently opined that Dr. Bringaze alone was responsible for any breach in the standard of care rendered

---

[8] Dr. Ahearn explained that in cardiac cirrhosis, the "[h]eart failure directly causes the cirrhosis."

11

to Mr. Blanford. He maintained this position while simultaneously acknowledging that the medical records documented that Mr. Blanford was seen by all three of the Ochsner Defendants on the day prior to surgery, that the Ochsner Defendants were aware of Mr. Blanford's condition pre-operatively, and that Mr. Blanford was seen by all three of the Ochsner Defendants post-operatively. Pre-operatively, Dr. Gaspard saw Mr. Blanford twice on July 17, 1012, and was following him for hepatic congestion; Dr. Gao saw Mr. Blanford on July 17, 2012, diagnosed valvular disease, and consulted with Dr. Bringaze's medical group for the AVR surgery; and Dr. Tellis saw Mr. Blanford on July 17, 2012, and was on board and aware that Mr. Blanford had elevated liver enzymes possibly related to hepatitic congestion. Post-operatively, the medical records include notes dated July 18 and 19, 2012, from pulmonology, though the notes were otherwise illegible; notes dated July 19, 20, and 21, 2012, from Dr. Gao in cardiology; and orders dated July 19, 20, and 21, 2012, from Dr. Gaspard in gastroenterology. When asked whether these physicians were aware of and monitoring Mr. Blanford's liver and kidney function, Dr. Ahearn responded affirmatively, and also stated, "[w]ell, so every hospital and ICU has its own culture, who manages what."

Relative to this motion for summary judgment, Dr. Ahearn repeatedly expressed his opinion that Dr. Bringaze was the physician at fault. Dr. Ahearn specifically stated:

> ... I think Dr. Bringaze was the mover and the shaker. Dr. Bringaze wrote all the orders for the fluids. Dr. Bringaze managed the pressures. Dr. Bringaze managed the ventilator, and Dr. Bringaze made the decision to transfer him out of the intensive care unit, and also, he's the one who decided to do the surgery. You know, by the time these doctors are brought to the table, especially the nephrologist, the proverbial cat is out of the bag. It's too late.

With respect to the roles the Ochsner Defendants and other healthcare providers played in the care rendered to Mr. Blanford, Dr. Ahearn stated, "[t]he dynamic of the physicians there is that Dr. Bringaze is the mover and -- you know, thoracic surgery calls all the shots in this dynamic. The rest of those physicians are fairly useless, honestly." Dr. Ahearn also testified that in his opinion, "nobody else on his medical team is going to say, no... you can't go to surgery because of his liver disease." However, Dr. Ahearn admitted that he, as a critical care medicine physician, "[could] tell a surgeon that it's contraindicated to go to surgery."

12

Additionally, Dr. Ahearn criticized Dr. Bringaze for not soliciting advice from other consulting physicians. However, he also opined that:

> None of the other clinicians that are involved in this case really carry -- really have the expertise to manage the patient in the intensive care unit and to deal with these issues... post[-]operatively... [T]he hospitalist is not going to manage the patient post[-]operatively. The gastroenterologist is, you know, he's just thinking about why his liver function tests are elevated. He's not going to manage the complex hemodynamic issues. The cardiologists are, they're sort of -- you know, [managing complex multi-organ failure is] just not their expertise.

Dr. Bringaze's affidavit, offered in support of the opposition to the Ochsner Defendants' motion for summary judgment, squarely contradicted Dr. Ahearn's testimony that Dr. Bringaze was solely responsible for the patient care and decisions that Dr. Ahearn identified as breaches in the standard of care. Dr. Bringaze's testimony was based on his knowledge and experience as a cardiothoracic surgeon. Dr. Bringaze attested, in pertinent part:

> As a consulted cardiothoracic surgeon, I was not called upon to participate in nor was I responsible for diagnosing, treating, and/or medically optimizing Mr. Blanford's underlying cardiac, hepatic, or renal conditions upon his admission to [Ochsner-Baton Rouge] or at any time prior to AVR surgery on July 18, 2012. In conformity with the purpose and expected scope of my cardiothoracic surgery consultation, I did not participate in these aspects of [Mr. Blanford's] pre-operative care.
>
> As a consulted cardiothoracic surgeon, I was not called upon to participate nor was I responsible for diagnosing, treating[,] and/or medically optimizing Mr. Blanford for heart failure, liver failure or liver dysfunction, kidney failure or kidney dysfunction, hepatorenal syndrome, or cardiac cirrhosis of the liver after he was admitted to [Ochsner-Baton Rouge] and prior to his AVR surgery on July 18, 2012. In conformity with the purpose and expected scope of my cardiothoracic surgery consultation, I did not participate in these aspects of Mr. Blanford's pre-operative care.
>
> As a consulted cardiothoracic surgeon, I was not called upon to participate nor was I responsible for diagnosing, treating, and/or medically optimizing Mr. Blanford's liver or kidney function or any alleged liver or kidney failure, cardiac cirrhosis of the liver, hepatorenal syndrome, and/or hepatic encephalopathy post-operatively while Mr. Blanford was in the ICU and/or on the telemetry floor. In conformity with the purpose and expected scope of my cardiothoracic surgery consultation, I did not participate in these aspects of Mr. Blanford's care.
>
> ...
>
> If there was a negligent failure to timely diagnose and/or appropriately treat or medically optimize Mr. Blanford for heart failure, cardiac cirrhosis of the liver, significant liver disease, liver dysfunction or liver failure, kidney dysfunction or kidney failure, and/or hepatorenal syndrome prior to AVR surgery on July 18, 2012, it would have been the responsibility of the internal medicine specialists and subspecialists evaluating and treating the patient in the pre-operative period, including Dr. Tellis, Dr. Gaspard, [and]

13

Dr. Gao... to diagnose and treat or medically optimize these conditions prior to surgery.

...

If, as Dr. Ahearn has testified in his deposition, it was a breach of the standard of care to fail to timely diagnose and/or appropriately test or medically optimize Mr. Blanford for heart failure, cardiac cirrhosis of the liver, significant liver disease, liver dysfunction or liver failure, kidney dysfunction or kidney failure, and/or hepatorenal syndrome prior to AVR surgery on July 18, 2012, then the internal medicine specialists and subspecialists evaluating and treating the patient in the pre-operative period, including Dr. Tellis, Dr. Gaspard, and Dr. Gao, were negligent.

...

If, as Dr. Ahearn has testified in his deposition, it was a breach of the standard of care to fail to timely diagnose and/or appropriately treat Mr. Blanford for liver failure and kidney failure or hepatorenal syndrome in the post-operative period and to prematurely transfer the patient out of the ICU with these conditions, then the internal medicine specialists and subspecialists evaluating and treating the patient [in the ICU], including Dr. Tellis, Dr. Gaspard, and Dr. Gao, were negligent.

On appeal, Dr. Bringaze, LAMMICO, and Mr. Blanford contend that the trial court erred in granting the Ochsner Defendants' motion for summary judgment because genuine issues of material fact exist. Having conducted a thorough *de novo* review of the record before us, we agree. Dr. Ahearn's deposition testimony set forth breaches in the standard of care regarding Mr. Blanford's pre-operative care, transfer from the ICU, and post-operative care. While Dr. Ahearn ascribed all responsibility and fault for these breaches to Dr. Bringaze, he repeatedly stated that the reason he found Dr. Bringaze at fault was because Dr. Bringaze was the physician in charge of and ultimately responsible for Mr. Blanford's care. However, Dr. Bringaze's affidavit provided expert testimony that disputed Dr. Ahearn's testimony regarding which physicians bore the actual responsibility for investigating and optimizing Mr. Blanford's pre-operative condition and diagnosing and treating Mr. Blanford's post-operative condition. Further, Dr. Bringaze's testimony disputed Dr. Ahearn's opinion that Dr. Bringaze was the physician at fault in the breaches in the standard of care that Dr. Ahearn identified. Thus, a genuine issue of material fact remains, and summary judgment was not appropriate. Further, having found that the summary judgment was improperly granted, we pretermit consideration of the remaining assignments of error.

## CONCLUSION

For the foregoing reasons, we reverse the April 15, 2021 judgment of the trial court granting summary judgment in favor of Lei Gao, M.D., Gregory P. Gaspard, M.D., Claude J. Tellis, M.D., and Ochsner Clinic Foundation, and dismissing them as defendants in this case. Costs of this appeal are assessed equally to Lei Gao, M.D., Gregory P. Gaspard, M.D., Claude J. Tellis, M.D., and Ochsner Clinic Foundation.

**REVERSED.**

15